Good morning. May it please the Court. Counsel. My name is Jason Rubins. I represent Jack Mielewski. We believe that the Illinois Workers' Compensation Commission erred when they ruled that defective notice is not proven unless you give notice of an actual industrial accident. There are two reasons that I believe this is an error. Number one, if you interpret the act this way, you render a portion of the act meaningless. Number two, you create a harder standard in which to file a workers' compensation claim than other types of claims, even though the Illinois Workers' Compensation Commission does not do that. Number three, you deliberately construed, and that specific part of the act says that notice is not a favored defense. I'd like to start off by pointing out that I believe this is clearly a question of law, and this is a de novo standard of review. The facts are not in dispute at all. Mr. Mielewski testified that he told the owner of the company who was deceased at the time of the testimony that he couldn't take things any longer and that he rolled up his pants and showed his boss and said, my legs are killing me. Well, let me ask you this. Didn't he also suffer from other physical infirmities that could have also explained the condition of his leg? Yes, he did. And I believe that that's a separate issue in the case as to whether there's a causal connection or not. With regard to notice, I believe his conduct was sufficient to prove defective notice. Not perfect notice, but defective notice. So if the employer notices the claimant limping, that's sufficient to impart notice of an industrial accident? In and of itself. In a repetitive trauma case, under these circumstances, yes. Well, how would somebody know if the person injured themselves over the weekend? It's how they wouldn't know, but at that time they know that the person has an injury. I grant that it's not perfect notice, but I feel that's defective notice. Well, I guess here's my question. What is it that triggers in the employer's mind a tie-in to the condition that's observed in the work? Are you saying the law is that the employer should assume that the claimant has a work-related injury even if the claimant doesn't say that? I mean, where do we draw the line on this notice issue? Well, first of all, they're going to have to know that it's work-related within three years because there's a three-year statute of limitations. So eventually they're going to have to notify their employer that they feel it's a work-related accident. Second, again, this is defective notice. We're not saying it's perfect notice. We're saying it's defective. Now, that doesn't mean you still can't defend the case on notice. You certainly are free to argue you were prejudiced, and therefore the ruling should be that that was improper notice. However, I believe once your employer is aware that you have an injury and that it's making it difficult for you to work, that's defective notice. So I believe clearly this is a question of law. Now, speaking of question of law, did the arbitrator issue a decision? Yes, the arbitrator found that there was notice. And where is that decision? Is it in your brief? Yes, it is addressed in my brief. Is that decision in your brief? The actual arbitrator's decision? No, I believe an arbitrator's decision should be part of the record. What record? Do you read the rules? Yeah, do you read the rules? No, I'm sorry. I believe that the record contains all the arbitrator's brief. Well, we understand that, but are we supposed to get in a fistfight amongst the five of us for the record? You're under an obligation to give us an appendix of this brief. It has to have the arbitrator's opinion, it has to have the commission's decision, and it has to have the order appealed from. Which ones are in your brief? I apologize that the arbitrator's decision is not in the brief. However, the reason I did not submit it is because in the past when we've tried to argue that the arbitrator's decision should be given weight, what we have been told is that this Court is not to review the arbitrator's decision. Well, it's called the commission's decision. Yes. Is it in there? The commission's decision? No, I don't believe it's... Your argument doesn't carry much weight, and you ought to read the Supreme Court rules with respect to filing these appeals. Okay, I apologize that that was not made part of my brief. The White case, I acknowledge that the White case is... You have to give notice of an actual industrial accident. So, in other words, I agree with the holding in White. Because in White, the petitioner specifically said, this didn't happen at work. So, I believe if your employer notices you have a condition, you're having a problem, they ask you about it, and you say, no, this isn't work-related, then I believe that's no notice at all. However, I dispute the dicta in White that says that in order to show even imperfect notice, you have to actually show notice of an industrial accident. And the reasons are twofold, as I stated in my introduction. Section 6C of the Act specifically provides for defective notice. And Section 6C says that in no instance is a defective notice to be a bar. You throw in the term defective notice. In this case, other than showing a physical infirmity, what's to tie that in to the workplace? What notice is that? Notice of what? White clearly stands for the proposition notice of an injury, of some type of an injury, is insufficient. The employer needs to be put on notice that the injury is in some way connected to the workplace. Where's the defective notice? All the claimant did here was show he had a condition. You've acknowledged that. Yes. He has a condition. So how does that tie in to itself, an industrial accident or an industrial problem, or any way to the workplace? Well, where's the defect in that? To me, it's notice that he's got a condition that's affecting his work. So what would be the difference if somebody has an injury at home over the weekend and comes in Monday morning and they're limping around, they can't move. Is the employer supposed to assume it was work-related? They're not supposed to assume anything until he files the application and says that he's got a worker's complaint. Right. So therefore, they've been given defective notice, and the employer can argue that they're prejudiced. The problem with finding that you must give actual notice and say, I had an accident at work. You don't have to say that. The case law makes it clear. There is no magical words that have to be given, I had an accident at work. That's not what the case law says, is it? In essence, I believe it says, yes, it says you have to give notice of an industrial accident. And giving notice of an industrial accident, you have to say, I hurt myself at work. To me, that's the only way you would give notice of an industrial accident. And the problem with that is, how can there ever be a situation then when there's defective notice? If you have to say, I hurt myself at work, that's perfect notice. That's if we buy your notice of your argument that it was defective notice as opposed to no notice at all. I'm sorry, I didn't understand. I said that's if we buy your argument that it was a defective notice as opposed to no notice at all, as the commission found. Yes, I found no notice. I'm sorry. Not defective notice. Yes. The commission found no notice. I agree, and I believe that that's the error, that there should be defective notice. I believe that, again, if you find there's no notice in this case, and the only way to show there's notice is by telling your employer that you had an industrial accident, then there's no such thing as defective notice, and the plain language of the Illinois Workers' Compensation Act is not being followed, and you're rendering a portion of the act useless. Similar along those lines, you create, what you do is, by doing this, you create a 45-day statute of limitations where a cop is supposed to be construed liberally, although there's obviously some debate going on about that right now. But as the law was written and interpreted at the time of the accident, it's supposed to be construed liberally and specifically notices this favored defense, and it specifically says that in the Illinois Workers' Compensation Act. Well, how do you explain that your client in the past specifically filed out, filled out forms regarding other work-related injuries and in this case didn't? Certainly. And that's why earlier I pointed out the distinction that this is a repetitive trauma case. It's a very difficult situation because the act, in my opinion, the legislative intent is when they're talking about the act and notice and different things, they're talking about specific injuries. So when you have a repetitive trauma, the act talks about having a date, time, place. And the problem is, and while I'm on this point about talking about different types of law, the problem is not only in workers' comp but all types of law, you don't always know where your injury came from. I submit to you, Mr. Malewski, at the time he first noticed his pain with his knees, he's not even sure if it's work-related or not. But I don't think that bars him from later filing a workers' comp claim. Take the example of a products liability case or an occupational exposure case. You have someone that may not be able to breathe. The employer knows they can't breathe. The employee might not know he was exposed to a specific chemical. So under a products liability statute, he's going to have two years from when he knew or should have known about the condition with an outside of four. So therefore, in a products case, which is much more disfavored, which doesn't specifically say its provisions are to be liberally construed, someone can file a products case but be barred, in essence, by the 45-day notice requirement of the Illinois workers' comp act. The 45-day notice requirement is a creation of the legislature, is it not? It certainly is, and that's why I believe in the same section that creates that, it is specifically noted that it's to be construed liberally, and it specifically carves out an exception for defective notice. All of which is true. However, I think most people would agree that simply limping around when it's known to the employer that you already have another condition that could easily explain why you're limping around is not, in and of itself, any notice. And don't forget, on the standard, we have to, you know, there is a deferential standard. I don't agree with you that this is a de novo. I think this is a manifest weight issue. Check out the cases, but I'll accept your argument. You think it's a de novo. I don't agree that it is de novo. I feel that it's de novo because I'm. Of what case? I'm sorry? Of what case? Court of authority. What case says what you're just saying. The issue of notice is de novo. What case stands for that proposition? It's my understanding that questions of law are reviewed de novo and questions of fact are manifest weight of the evidence. And my issue is with White specifically saying you have to give notice of an industrial accident. And I think that's, if that's the ruling, then the section of the act that talks about defective notice and that notice is a disfavored defense is rendered meaningless. And in closing, I understand I'm not allowed to ask the questions here, but I will. Are we supposed to respond to your questions now? No, sir. Good. But I would ask that you, respectfully ask that you ask counsel what would be a situation under 6C where you gave defective notice. If the ruling is you always have to give notice of an industrial accident, how would you ever have a situation under 6C where you gave defective notice? That would be perfect notice. You never have defective notice. Do you have a opposing counsel? I don't see any counsel at the council table. Yes, sir, she's in the front row. She's going to be seated at the counsel table. Thank you. You have time on rebuttal. Thank you. Counsel, please. May it please the court, Nadine Neuer, representing Chicago-Land Quad Cities Express. And we actually discussed adding a supplemental appendix to our brief for your convenience, and I apologize. We chose not to do that.    Thank you. Thank you. Thank you. Thank you. Thank you. I'll take my question. All have your own copies? I agree that I don't believe this is an issue contrary to law. It's a manifest weight question. And the reason that counsel is arguing law and trying to argue de novo is that the manifest weight is so strong against him in this case that he's trying to find another argument to bring before you. In this case, I mean, first of all, there's a question of whether this  In fact, in October of 2005, Mr. Vavreck had passed away. He passed away in 2003. There was no way for us to find out whether this conversation occurred because until October of 2005, the accident date had been June 1 of 2002 with a different insurance company, a different attorney. We never had a chance to find out whether the conversation took place. Additionally, what also wasn't brought up was that the Petitioner, after he alleges he provided notice of another accident, November 30 of 2000, he actually settled a case that he had filed in January 13, 1999 on December 7 of 2000, which was also for the same body part as this now alleged claim is. Then we go to the actual conversation he had with his employer. We know he has Addison's disease. We know he has arthritis. Notes in June of 2000 actually discuss the accident from January 13, 1999 and discuss the fact that his bilateral knees should require additional treatment. He's also taking prednisone. The swelling in his knees is from the Addison's disease. There's actually pitting edema in the records noting his treatment with Addison's disease. What he actually tells us... I'll stop on the issue of whether or not this conversation actually took place. As you know, opposing counsel is asking a rhetorical question, inviting you to answer why isn't this a case of defective notice, this conversation? If it took place, why wouldn't it be some type of defective notice? Because it's no notice of any accident. It's an individual coming to or alleging he had a conversation with his employer saying my knees are swollen, I'm in pain, I'm going to see the doctor. There's absolutely no indication of anything regarding an injury. Or anything connected to the workplace. Exactly. Everybody knew he had Addison's disease. He'd been treating for that. The only thing that could have possibly provided any defective notice is that he had an open claim for the same body part, which he then settled pro se seven days later. Then in April of 2003, he files a claim for June 1 of 2000. And in October of 2005, he reamends the application back to December 1 of 2000. Was there an objection or opposed as to his testimony as the conversation with the deceased employer?  Yes, I filed a motion under the Dead Man's Act. And I also filed a motion under statute of limitations attempting to argue that the amendment of the application was actually not allowable. But in fact, the amendment and the case law states that since he filed in April of 2003, he was able to amend it back three years. I don't care about that. But you wouldn't oppose an objection to his testifying as to the conversation with the deceased employer? Yes, several times. And the commission didn't rule on it? They contended it was moved? Yes, they did. They decided that? Yes. I'm sorry. I interrupted you. Let's see. Do you see this as a repetitive trauma case? Well, that's what the petitioner alleges. I actually, you know, we didn't really find there was a. When is a claimant required to give notice in a repetitive trauma injury? That's a very interesting question. You know, the Act says within 45 days. And then we have the reasonable person standard of when the petitioner would understand he had an accident. We chose not to appeal the issue of accident. We chose to stand with the commission on the issue of notice because we feel that it is definite the petitioner didn't provide any notice. And regarding accident, the reasonable person standard, the courts have chosen to decide that the petitioner himself was the reasonable person, which essentially makes all of us have to be psychic to understand whether he as a reasonable person thought at the time that there was a repetitive trauma claim. Oh, he had defended this case. I know it's another insurance company. Had this not been an amendment back to this alleged conversation, basically, in December 1. That would have then been more to accident because actually at the time of the case, June 1 of 2008, the employer who was alive at the time said that had a note in the personnel file saying that there was no notice at that time either. He filed in April of 2003, which is apparently the first notice that anybody even had regarding his alleged repetitive trauma claim because he had been continuously treating for Addison's disease. And even the medical records, which actually goes to causal relation, which we would have to then readdress again all over. So there are several doctors that keep stating he has Addison's disease, ongoing osteoarthritis, several issues with his knees, and what we get to then with the causal relation, which would be the issue there. That would have been causal relationship that you would defend against. I understand that. But would you have gone after lack of notice if it had not been amended? Yes. Actually, at the time, like I said, there's notice, there's a piece of paper in the 2003. So notice would have been an issue in the June 1, 2000 case. But who didn't know anything? Why would it be? I mean, a repetitive trauma, isn't it an awareness, reasonable man, standard awareness that my condition of ill-being at this point in time is attributable to something related to work? Yes. So the notice requirement would have been part of the causal relation. It would have been intertwined. And I understand that in repetitive trauma, we go back to when there's a reasonable person, which is the Petitioner, in his head believe he had an accident. Right. I think that, you know, we discussed whether we would appeal accident because I think even Petitioner stating he had an accident in December 1 of 2000, after amending the application back, et cetera, I think It would have been more difficult to defend if there had been no amendment. Probably. Okay. Yes. I definitely think that the way the amendment occurred, I have a very strong case. We chose to stand only on notice with the commission. I would have thoroughly enjoyed also briefing the accident, which I think is a very interesting concept. But we chose to just stand strong on what we felt was a very clear issue here. He did not provide notice. He didn't. And this is not a law issue. It's a manifesto issue. Thank you. Thank you, counsel. Roberto. You're retiring on effective notice of the conversation with Vaverick. Is that correct? Correct. He was dead? Yes. There was an objection of the Dead Man's Act, your client testifying, as a conversation? Yes, Your Honor. It was fully briefed in front of the arbitrator, the record. It was argued on the record. And the arbitrator denied it. The reasoning is that that conversation is actually allowed because it doesn't affect his pecuniary interest because he has insurance to cover it. And there was case law in that it's in the arbitrator made a ruling based on my brief in the case law. How does it not affect his pecuniary interest just because he has insurance? Is insurance given to him for nothing? Again, I apologize that I didn't realize that this was an issue before this court. It had already been fully briefed. It had already been decided by the arbitrator. And that part of the arbitrator's ruling was not appealed to the commission. Yes, it was. The commission addressed the issue. They said it was moved. They addressed it. It's in their decision. Do you want me to read it to you? No, sir. We have a copy of the decision. Okay. I believe by being – either way, they have not brought – Well, without the conversation, you have no notice at all. You can see that, right? Without the conversation? Yeah. There's no notice at all. Yes. The contender falls in a conversation. Respondent raised the issue of the dead man's death concerning conversations with Jim Maverick, deceased at the time of the hearing. Commissioners found that the conversations he had with Maverick were insufficient to prove notice of the accident. The issue was moved. Okay. I recognize – The commission did address it. I'm sorry. I didn't hear what you said. The issue was before the commission. But it's not – but it wasn't before the circuit court or this court. We can affirm the commission for any reason in the record. I understand that. I'm very familiar with the issue in that there's – there was case law on point, and that's why the arbitrator ruled the way he did, and that it was fully briefed and argued orally in front of him.  More specifically, there's case law that says that in a conversation that affects an insurance claim or a claim, a liability claim, if there is insurance, then the petitioner can testify to conversations with the owner of a business. There was a case right on point. Interesting case. Because unless the employer gets free insurance, there's a pecuniary interest. To me, when the initial motion to bar the conversations under the Dead Man's Act was filed, I thought I had a problem. Yes. On its face, I thought it would be barred. Do you have a cite for that case? I apologize. I did not anticipate talking about the Dead Man's Act. I thought that was a resolved issue. Fair enough. Okay. Believe me, I will learn from all of this. Your time is up, counsel. Okay.  Thank you.